AE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GLENN MOAK, ROBERT JANSEN, and WILLIAM BERGLUND, | ) ) ) | |
| Plaintiffs, | ) ) ) | No. 05-C-1652 |
| v. | ) ) | |
| THOMAS ROSZAK and TR CHICAGO AVENUE, Inc., an Illinois Corporation, | ) ) ) | HONORABLE DAVID H. COAR |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Before this court is the motion filed by Defendants Thomas Roszak and TR Chicago Avenue, Inc. to dismiss the Complaint filed by Plaintiffs Glenn Moak, Robert Jansen, and William Berglund. For the reasons set forth below, Defendants' motion to dismiss is GRANTED in its entirety with leave to file an amended complaint within 21 days of the date of this order.

I.  FACTUAL BACKGROUND

For the purposes of this motion, the following facts alleged in Plaintiffs' complaint are taken as true. Defendant TR Chicago, Inc. is an Illinois Corporation and the general partner of TR Chicago Avenue Partners, L.P. ("TR Chicago"), a limited partnership established for the purchase and development of real estate located at 1210-28 Chicago Avenue and 1234-1238 Chicago Avenue in Evanston, Illinois. (Compl. ¶¶ 1, 12).

-1-

Defendant Thomas Roszak ("Roszak") was a special limited partner of TR Chicago. (Compl. ¶ 4). At all relevant times, Roszak was also an officer, director, and sole shareholder of TR Chicago, Inc. In addition, Roszak owned a company, Roszak/ADC, L.L.C., that served as the general contractor for the Chicago Avenue project. The company had direct control over the selection of contractors, the scope of the work, the letting of contracts, and payment to the company. (Compl. ¶ 12).

Plaintiffs Glenn Moak, Robert Jansen, and William Berglund (collectively, "Plaintiffs") are individuals and residents of the State of Illinois. In 2000, Moak purchased four units in the TR Chicago, investing a total of $100,000 in the partnership. In the same year, Jansen purchased two units in the TR Chicago (a $50,000 investment) and Berglund purchased one unit (a $25,000 investment). Berglund's company also served as the concrete contractor for the Chicago Avenue project. (Compl. ¶¶ 9-11).

The TR Chicago partnership was formed on February 27, 2000 to acquire and develop the parcels of property identified above. On or about June 6, 2000, TR Chicago published a Confidential Private Placement Memorandum ("PPM") designed to raise capital in the partnership. Pursuant to the PPM, the offering price per unit was $25,000, for a total offering of $2,575,000. (Compl. ¶ 14). The PPM stated that on total revenues of $49,497,029 and project costs of $31,083,471, after repayment of a construction loan and return of the limited partners' investment, the development was projected to realize a profit of $5,038,558. The PPM was careful to disclose that the forecasts were merely projections upon which no assurances could be made. (Compl. ¶ 15).

From the time of Plaintiffs' investment, Defendants provided Plaintiffs with optimistic reports of the development's progress and its profitable returns to investors. (Compl. ¶ 3). In 2002, according to the Schedule K-1's Plaintiffs received, the partnership realized a taxable profit per unit of approximately $4,612.75. In 2003, according to the K-1's, the profit grew to $10,273. Although this profit was in paper only since no money had been distributed to the limited partners, Plaintiffs paid taxes on this profit. (Compl. ¶ 16).

In March 22, 2004, Roszak sent a letter to each partner enclosing that partner's schedule K-1 for 2003. The letter stated that TR Chicago sold a number of units at a profit; it had only ten units left to sell; the project would be finished shortly; and the partners could expect distribution of their capital accounts to begin by the end of 2004. The K-1's accompanying each letter reflected ordinary taxable income to the partners even though the partners had not yet received any distributions. (Compl. ¶ 3).

Less than six months later, on September 10, 2004, Roszak provided Plaintiffs with an "Investor Update" ("Update"). The Update reported "disappointing results for the Chicago Avenue project with investors likely to receive as a final distribution approximately 42% of their invested capital," and losses despite the fact that actual revenues exceeded projected revenues by 23%. (Compl., Ex. B at 1). The Update also revealed for the first time that the cost of the project was $46.6 million, rather than the $31.6 million originally disclosed. (Compl. ¶ 17). Defendants attributed the substantial cost increases to various factors, including the economic effects of September 11, 2001, unexplained delays, and increases in the price of materials and labor. The list of actual project costs attached to the Update indicated that the general contractor's fee (for an entity controlled by Roszak) increased over 220% (from $450,000 to

$1,453,419.38) and its salaries increased 250% (from $560,000 to $1,628,223.93). (Compl. ¶ 18). At the time of the filing of the Complaint, the limited partners had not received even the promised 42% of their invested capital. (Compl. ¶ 3).

Plaintiffs allege that, in order to solicit their participation in the offering, Defendants supplied the project's budget and represented that Plaintiffs would receive a return of their original investment and a profit. The projections, according to Plaintiffs, were based upon the assumptions that the project revenues would be used to pay the costs associated with the Chicago Avenue project only, and the general contractor's fees and salaries would be commensurate with the projected scope of the work. (Compl. ¶ 19).

Plaintiffs allege that the representations contained in the PPM were materially false: Much of the cost overruns attributed to the Chicago Avenue project resulted from Defendants funding construction projects unrelated to the limited partnership. In addition, Defendants failed to disclose their intent to unilaterally increase the fees and salaries paid to themselves by as much as 250%. According to Plaintiffs, at the time of their investment, Defendants knew or recklessly disregarded that their projections, purportedly based on "currently available information," had no basis in reality. (Compl. ¶ 20). Defendants knew that (a) the revenues from the project would be used to fund outside projects and (b) the fees to Roszak and Roszak's company would be greatly inflated. (Id.). Finally, Plaintiffs allege that the explanations Defendants provided in the Investor Update for the project's losses were disingenuous and merely intended to further conceal the fraud perpetrated by Defendants upon Plaintiffs. (Compl. ¶ 4).

Plaintiffs have charged Defendants with violation of Section 10(b) of the Securities Act of 1934 and Rule 10b-5, which was promulgated under the Act (Count I); common law fraud

(Count II); violation of Section 12 of the Illinois Securities Law of 1953 (Count III); and breach of fiduciary duty (Count IV).

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). On a 12(b)(6) motion, the Court accepts all well-pleaded allegations in the plaintiff's complaint as true, Fed. R. Civ. P. (12)(b)(6), and views the allegations in the light most favorable to the plaintiff. Bontkowski v. First National Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993).

Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") heighten the pleading requirements for fraud. Rule 9(b) requires a plaintiff to state with particularity any circumstances constituting fraud. Thus, while a plaintiff may plead states of mind generally, he or she must plead the circumstances–the "who, what, when, where, how"–of the alleged fraud in detail. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990).

The PSLRA requires a complaint to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1) (2005). In addition, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (2005). If the

complaint fails to do either, the court shall dismiss the complaint. 15 U.S.C. §78u-4(b)(3)(A) (2005).

## III. ANALYSIS

### A. Count I

In Count I, Plaintiffs allege that Defendants violated Section 10(b) of the Securities Act of 1934 and Rule 10b-5, promulgated under the Act. Defendants seek to dismiss this Count for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) and failure to adhere to Rule 9(b)'s particularity requirement.

To state a Rule 10b-5 claim, a plaintiff must prove that the defendant: (1) made a misstatement or omission, (2) of a material fact, (3) with scienter, (4) in connection with the purchase or sale of securities, (5) upon which the plaintiff relied, and (6) that reliance proximately caused the plaintiff's injury. Stransky v. Cummins Engine Co., Inc. 51 F.3d 1329, 1331 (7th Cir. 1995).

To prove the first and second elements of their Rule 10b-5 claim, Plaintiffs allege that Defendants made material, factual misstatements and omissions related to the true use of revenues generated by the limited partnership. (Compl. ¶ 8). According to Plaintiffs, Defendants made false statements and failed to disclose in the PPM that the project's capital and revenues would be used to pay "exorbitant fees and salaries [to Roszak] and, on information and belief, ... to fund other Roszak construction projects." (Compl. ¶ 15).

Plaintiffs, however, have not pleaded with particularity the circumstances constituting this fraud, as required by Rule 9(b) and the PSLRA. Plaintiffs have stated the *who* and *what* with bare detail, but not the *when, where* or *how*. Plaintiffs have not suggested approximately *when* Defendants diverted funds from the Chicago Avenue project, *what* other construction projects Defendants funded, or *how* Defendants accomplished this diversion. In fact, Plaintiffs make their sparsely-stated allegation "upon information and belief." Yet "allegations made upon information and belief are insufficient, even if the facts are inaccessible to the plaintiff, *unless the plaintiff states the grounds for his suspicions*." Uni*Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 924 (7th Cir. 1992) (emphases added). Plaintiffs have not stated the grounds for their suspicion that Defendants engaged in an "intended misappropriation" of Plaintiffs' investment. (Compl. ¶ 2).

Similarly, Plaintiffs have not suggested the *when, where*, and *how* regarding Roszak's scheme to pay himself exorbitant fees. Nor have Plaintiffs stated the grounds for their suspicion that Roszak intended to engage in "undisclosed self-dealing" even before he approached Plaintiffs to invest in the partnership. (Compl. ¶ 2). Plaintiffs have merely stated that the general contractor was originally going to be paid $450,000 in fees and $560,000 in salaries but was ultimately paid $1,453,419.38 in fees and $1,628,223.93 in salaries. Moreover, Plaintiff's Exhibit B shows that nearly all of the projects' estimated costs increased over 100% by the time Defendants disclosed the actual costs. This Court, therefore, cannot even infer that Defendants acted with a fraudulent state of mind in determining its fees and salaries.

"By requiring the plaintiff to allege the who, what, where, and when of the alleged fraud, [Rule 9(b)] requires the plaintiff to conduct a precomplaint investigation in sufficient depth to

assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." Ackerman v. Northwestern Mutual Life Insurance Co., 172 F.3d 467, 469 (7th Cir. 1999). Plaintiff's broad statements about Defendants' alleged material misrepresentations and omissions demonstrate the lack of depth Rule 9(b) and the PSLRA are designed to avoid.

Because the Complaint does not plead with particularity the first and second elements of a Rule 10b-5 claim, this Court need not determine whether Plaintiffs sufficiently pleaded the third, fourth, fifth, and sixth elements of the claim. Plaintiffs have failed to state with particularity critical facts on which Plaintiffs' allegations of fraud are formed; accordingly, Count I must fail. Defendants' motion to dismiss Count I is granted with leave to file an amended complaint within 21 days.

### B. Counts II-IV

Counts II-IV are state law claims. In the absence of a federal cause of action, this Court will not exercise supplemental jurisdiction over the state claims. See 28 U.S.C. § 1367(c)(3). The Court will dismiss Counts II-IV without prejudice at this time. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966); Nemkov v. O'Hare Chicago Corp., 592 F.2d 351, 353 n.1 (7th Cir. 1979) (holding that the district court properly dismissed state law claims when the federal securities claims were dismissed at the outset of the case).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in its entirety with leave to file an amended complaint within 21 days of the date of this order.

Enter:

_David J. Coar_

David H. Coar

United States District Judge

Dated: **October 6, 2005**