**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GLENN MOAK, ROBERT JANSEN, and WILLIAM BERGLUND, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | No. 05 C 1652 |
| | ) | JUDGE DAVID H. COAR |
| THOMAS ROSZAK AND TR CHICAGO AVENUE, Inc., an Illinois Corporation, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Glenn Moak, Robert Jansen, and William Berglund are suing Defendants Thomas Roszak and TR Chicago Avenue, Inc. (collectively, "Defendants") for violation of state and federal securities laws, common law fraud, and breach of fiduciary duty. Before this Court is Defendants' motion to dismiss the Amended Complaint. For the reasons set forth below, Defendants' motion is DENIED.

**I.    FACTUAL BACKGROUND[1]**

    **A.    The Parties**

Defendant TR Chicago, Inc. is an Illinois Corporation and the general partner of TR Chicago Avenue Partners, L.P. ("TR Chicago"), a limited partnership established for the purchase and development of real estate located at 1210-28 Chicago Avenue and 1234-1238 Chicago Avenue in Evanston, Illinois ("the Chicago Avenue Project").

---

[1] For the purposes of this motion, the following facts alleged in Plaintiffs' Amended Complaint are taken as true.

Defendant Thomas Roszak ("Roszak") was a special limited partner of TR Chicago. At all relevant times, Roszak was also an officer, director, and sole shareholder of TR Chicago, Inc. In addition, Roszak owned a company, Roszak/ADC, L.L.C., that served as the general contractor for the Chicago Avenue project. The company had direct control over the selection of contractors, the scope of the work, the letting of contracts, and payment to itself.

Plaintiffs Glenn Moak, Robert Jansen, and William Berglund (collectively, "Plaintiffs") are individuals and residents of the State of Illinois. In 2000, Moak purchased four units in TR Chicago, investing a total of $100,000 in the partnership. The same year, Jansen purchased two units in TR Chicago (a $50,000 investment) and Berglund purchased one unit (a $25,000 investment). Berglund's company also served as the concrete contractor for the Chicago Avenue project.

### B. The Initial Investment

The TR Chicago partnership was formed on February 27, 2000 to acquire and develop the parcels of property identified above. On or about June 6, 2000, TR Chicago published a Confidential Private Placement Memorandum ("PPM") designed to raise capital in the partnership. Pursuant to the PPM, the offering price per unit was $25,000 for a total offering of $2,575,000. The PPM stated that on total revenues of $49,497,029 and projected costs of $31,083,471, after repayment of a construction loan and return of the limited partners' investment, the development was projected to realize a profit of $5,038,558. The PPM was careful to disclose that the forecasts were merely projections upon which no assurances could be made.

From the time of Plaintiffs' investment, Defendants provided Plaintiffs with optimistic reports of the development's progress and its profitable returns to investors. In 2002, according to the Schedule K-1's Plaintiffs received, the partnership realized a taxable profit per unit of approximately $4,612.75. In 2003, according to the K-1's, the profit grew to $10,273. This profit was in paper only since no money had been distributed to the limited partners. Nonetheless, Plaintiffs paid taxes on this profit.

On March 22, 2004, Roszak sent a letter to each partner enclosing that partner's schedule K-1 for 2003. The letter stated that TR Chicago sold a number of units at a profit; it had only ten units left to sell; the project would be finished shortly; and the partners could expect distribution of their capital accounts to begin by the end of 2004. The K-1's accompanying each letter reflected ordinary taxable income to the partners even though the partners had not yet received any distributions.

### C. The Investor Update

Less than six months later, on September 10, 2004, Roszak provided Plaintiffs with an "Investor Update" ("Update"). The Update reported "disappointing results for the Chicago Avenue project with investors likely to receive as a final distribution approximately 42% of their invested capital," and losses despite the fact that actual revenues exceeded projected revenues by 23%. Am. Compl., Ex. B at 1. The Update also revealed for the first time that the cost of the project was $46.6 million, rather than the $31.6 million originally disclosed. Defendants attributed the substantial cost increase to various factors, including the economic effects of September 11, 2001, unexplained delays, and increases in the price of materials and labor. The list of actual project costs attached to the Update indicated that the general contractor's fee (for

an entity controlled by Roszak) increased over 220% (from $450,000 to $1,453,419.38) and its salaries increased 250% (from $560,000 to $1,628,223.93). In addition, according to the Update, the concrete contractor (Plaintiff Berglund's company) was paid a total of $2,455,413.93. In reality, Plaintiffs allege, the concrete contractor was only paid $1,313,000. At the time Plaintiffs filed their Amended Complaint, they had not received even the promised 42% of their invested capital.

### D. The Oxford Loan Agreement

Oxford Bank & Trust Company was the construction lender for the Chicago Avenue project. TR Chicago entered into a loan agreement ("the Oxford Loan") that secured an aggregate loan commitment for the Chicago Avenue project of $27,022,455. The Oxford Loan specified that the loan could be repaid out of the project's condominium sales. If Defendants adhered to this provision, the loan would not be put at risk if the cost of the project increased. Defendants, however, fully paid the Oxford Loan in accordance with the projections and budget provided to the lender even though twenty to thirty units remained unsold.

### E. Roszak's Other Construction Projects

Roszak was involved with two other construction projects in 2003 and 2004 while the condominiums of the Chicago Avenue project were being built and sold. The first project was another condominium development also located in Evanston. The second was a multi-million dollar personal residence for Roszak located on the North Shore of Chicago.

### F. Plaintiffs' Allegations

Plaintiffs allege that, in order to solicit their participation in the offering, Defendants supplied the project's budget and represented that Plaintiffs would receive a return of their original investment and a profit. The projections, according to Plaintiffs, were based upon the assumptions that the project revenues would be used to pay the costs associated with the Chicago Avenue project only, and the general contractor's fees and salaries would be commensurate with the projected scope of the work.

According to Plaintiffs, the representations contained in the PPM were materially false: Much of the cost overruns attributed to the Chicago Avenue project resulted from Defendants' funding of construction projects unrelated to the limited partnership. Roszak's representations were also false: The concrete contractor's actual payment was significantly lower than stated in the Update. Thus, Plaintiffs contend, the remaining $1.1 million funded Roszak's two other projects. Plaintiffs further contend that Defendants failed to disclose their intent to unilaterally increase the fees and salaries paid to themselves by as much as 250%. Moreover, the explanations in the Update for the project's losses were disingenuous and merely intended to further conceal Defendants' fraud. Finally, according to Plaintiffs, Defendants' ability to fully repay the Oxford Loan while twenty to thirty units remained unsold proves that (a) they diverted the proceeds from the sale of those twenty to thirty units and (b) the overstated costs were not attributed to the Chicago Avenue project.

In sum, Plaintiffs allege that at the time of their investment, Defendants knew or recklessly disregarded that Defendants' projections, purportedly based on "currently available information," had no basis in reality. Defendants knew that (a) the revenues from the project

would be used to fund outside projects and (b) fees to Roszak and Roszak's company would be greatly inflated.

Plaintiffs have charged Defendants with violation of Section 10(b) of the Securities Act of 1934 and Rule 10b-5, which was promulgated under the Act (Count I); common law fraud (Count II); violation of Section 12 of the Illinois Securities Law of 1953 (Count III); and breach of fiduciary duty (Count IV).

## II.     STANDARD OF REVIEW

The purpose of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. Gibson v. City of Chicago, 917 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted).  On a 12(b)(6) motion, the Court accepts all well-pleaded allegations in the plaintiff's complaint as true, Fed R. Civ. P. 12(b)(6), and views the allegations in the light most favorable to the plaintiff. Bontkowski v. First National Bank of Cicero, 998 F.2d 458, 461 (7th Cir. 1993).

Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") heighten the pleading requirements for fraud.  Rule 9(b) requires a plaintiff to state with particularity any circumstances constituting fraud.  Thus, while a plaintiff may plead states of mind generally, he or she must plead the circumstances—the "who, what, when, where, how"—of the alleged fraud in detail.  DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990).

The PSLRA requires a complaint to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with

particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(2005). In addition, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(2005). If the complaint fails to do either, the court must dismiss the complaint. 15 U.S.C. § 78u-4(b)(3)(A) (2005).

III. ANALYSIS

A. Count I

Count I alleges that Defendants violated Section 10(b) of the Securities Act of 1934 and Rule 10b-5, promulgated under the Act. Defendants seek to dismiss this Count for failure to adhere to Rule 9(b) and failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

1. **Does Count I of the Amended Complaint adhere to Rule 9(b)?**

Plaintiffs allege that Defendants made false statements and failed to disclose in the PPM that the Chicago Avenue project's capital and revenues would be used to (a) "fund other Roszak construction projects" and (b) pay "exorbitant fees and salaries" to Roszak. Am. Compl. ¶ 15.

This Court previously held that Plaintiffs adequately pleaded in their Original Complaint the *who* and the *what* associated with Defendants' "intended misappropriation" of Plaintiffs' investment for the benefit of other construction projects, but not the *when*, *where*, and *how*. Id. ¶ 2.[2] In the Amended Complaint, Plaintiffs provide the *when* by alleging that Defendants diverted

---

[2] See Moak v. Roszak, No. 05-C-1652, 2005 WL 2563014, at *7 (N.D. Ill. Oct. 6, 2005) (granting Defendants' motion to dismiss Plaintiffs' original complaint). In that memorandum opinion and order, this Court held that Plaintiffs had not "suggested approximately *when* Defendants diverted funds from the Chicago Avenue project," *where* the funds were diverted, "*what* other construction projects Defendants funded, or *how* Defendants accomplished this

funds during the sale of the project's last twenty to thirty units. Plaintiffs allege to *where* funds were diverted by identifying two other Roszak construction projects during the relevant time frame. Finally, Plaintiffs allege that Defendants accomplished the diversion (the *how*) by using proceeds from the last twenty to thirty closings. Thus, Plaintiffs have stated with particularity the circumstances, as required by Rule 9(b), related to Defendants' alleged misappropriation of investment funds.

As to Defendants' other alleged fraud—"undisclosed self-dealing," see id.—this Court dismissed Plaintiffs' Original Complaint in part because it set forth the *who* and *what* but did "not suggest[] the *when, where, and how* regarding Roszak's scheme to pay himself exorbitant fees." Moak, 2005 WL 2563014 at *7. The Amended Complaint provides the following new information: (1) the statement that "Roszak's allegations that the concrete contract increased approximately 10% were false," see Am. Compl. ¶ 18; (2) the conclusion that, because of Roszak's gross overstatement regarding the concrete costs, "over $1.1 million went to projects other than the Chicago Avenue project," see id. ¶ 22; (3) a description of two other construction projects Roszak worked on in 2003 and 2004, see id. ¶ 23; (4) an explanation of the Oxford loan; see id. ¶ 24; and (5) the conclusion that because Defendants could fully repay the Oxford loan, "it is apparent that: a) defendants diverted proceeds from the sale of the remaining 20 to 30 units; and b) the alleged costs overruns were not, in large part, attributable to the Chicago Avenue project," see id. ¶ 25.

The allegations in the Amended Complaint, which also incorporate those of the Original Complaint, now provide the *when*, *where*, and *how* regarding Defendants' scheme to pay themselves exorbitant fees. Defendants accomplished the scheme, Plaintiffs allege, by understating in the projected budget the costs for some line items (including the fee for the

---

diversion." Id. at *7.

general contractor who is one of the Defendants) and by misstating in the Update the actual fees paid to other contractors (including the concrete company run by one of the Plaintiffs).³ Thus, Plaintiffs' allegations of Defendants' undisclosed self-dealing now meet the pleading requirements of Rule 9(b).

## 2. Does Count I state a claim under Rule 10b-5?

To survive a motion to dismiss for failure to state a Rule 10b-5 claim, Plaintiffs must do more than *plead* the circumstances of the alleged fraud; they must "state with particularity the facts giving rise to a strong inference" that Defendants committed fraud in violation of federal securities law. 15 U.S.C. § 78u-4(b)(2)(2005). Cf. Makor Issues & Rights, Ltd. v. Tellabs, Inc., 437 F.3d 588, 602 (7th Cir. 2006) ("[The PSLRA] unequivocally raise[d] the bar . . . . Not only must plaintiffs meet a particularity requirement; they must also meet a substantive requirement by pleading sufficient facts to create 'a strong inference' of scienter."); Chu v. Sabratek Corp., 100 F. Supp. 2d 815, 823 (N.D. Ill. 2000) (internal citation omitted) ("[T]he language of the PSLRA imposes a stricter pleading standard than that imposed by Rule 9(b)."). To state a Rule 10b-5 claim, Plaintiffs must allege that Defendants: (1) made a misstatement or omission, (2) of a material fact, (3) with scienter, (4) in connection with the purchase or sale of securities, (5) upon which Plaintiffs relied, and (6) that reliance proximately caused Plaintiffs' injury. Stransky v. Cummins Engine Co., Inc., 51 F.3d 1329, 1331 (7th Cir. 1995).

Plaintiffs have alleged adequately the first, second, and fifth elements of a 10b-5 claim. The Amended Complaint states that Plaintiffs reasonably relied on material, factual

---

³ Plaintiffs note that after they filed the Amended Complaint, during discovery, they received multiple documents from Oxford Bank confirming that the "actual costs of construction" disclosed by Roszak to the partners were not based in fact. Pl.'s Resp. at 11 n.1. While the information contained in these documents provides factual support for Plaintiffs' allegations, this Court will not consider matters outside the pleadings. See Fed. R. Civ. P. 12(b)(6).

misstatements and omissions by Defendants in the PPM about the true use of the limited partnership's revenues. Nonetheless, Defendants argue, Plaintiffs have failed to allege sufficiently the remaining elements of their claim.

First, according to Defendants, Plaintiffs have failed to plead sufficiently scienter, the third element. To satisfy the scienter requirement, Plaintiffs must allege that Defendants acted with the "intent to deceive, manipulate or defraud," Ernst & Young v. Hochfelder, 425 U.S. 185, 193 (1976), "or at least with recklessness so severe that it is the functional equivalent of intent," Searls v. Glasser, 64 F.3d 1061, 1066 (7th Cir. 1995). Plaintiffs argue that their Amended Complaint meets this standard. They specifically point to paragraph 15, which alleges, in relevant part, that "the PPM omitted . . . that Roszak knew that the project was merely a vehicle" for him to profit from exorbitant fees and to fund his other construction projects; and paragraph 20, which alleges, in relevant part, that "[a]t the time of the plaintiffs' investments, defendants knew or recklessly disregarded that the projections and representations based upon 'currently available information' had no basis in reality." Am. Compl. ¶¶ 15, 20.

The Court finds that the allegations in the Amended Complaint do collectively establish a strong inference that Defendants intended to deceive Plaintiffs or acted with reckless disregard. Cf. Makor, 437 F.3d at 601 (directing lower courts to "examine all of the allegations in the complaint and then to decide whether collectively they establish . . . an inference"). Nearly all of the Chicago Avenue project's estimated costs increased over 100% by the time Defendants disclosed the actual costs; Defendants fully and timely repaid the bank loan despite these costs increases and despite having not yet sold twenty to thirty condominium units; the general contractor, an entity controlled by Defendant Roszak, represented one of those line item cost increases—a 220-250% increase; Defendants sent Plaintiffs investment reports showing a profit

-10-

throughout the project term and then, only six months after one of these optimistic reports, issued a radically different investor update reporting astounding losses; and Defendants grossly overstated the salaries paid to a company run by one of the Plaintiffs. These facts provide sufficient basis for Plaintiffs' scienter allegations. Cf. id. at 602.[4]

Second, Defendants argue that Plaintiffs have failed to plead Defendants' recklessness or intent to deceive "in connection with the purchase or sale of any security"—the fourth element of a Rule 10b-5 claim. 17 C.F.R. § 240.10b-5(c). In short, Plaintiffs must plead sufficiently that Defendants' intent was formed at the time Plaintiffs invested in the Chicago Avenue Project in 2000. See O'Brien v. Continental Illinois National Bank and Trust Co. of Chicago, 593 F.2d 54, 60 (7th Cir. 1979) (stating that the "fundamental purpose" of Rule 10b-5 is to require full disclosure of "information that would be useful to [investors] *in deciding whether to buy or sell* securities") (emphases added).

It is true that the allegedly fraudulent acts that Plaintiffs describe with particularity occurred between 2002 and 2004, when Defendants sent Plaintiffs optimistic investment reports and the Update with questionable figures. Defendants argue that these acts took place subsequent to Plaintiffs' purchase; therefore, they cannot form the basis of a Rule 10b-5 claim. Compare S.E.C. v. Jakubowski, 150 F.3d 675, 679 (7th Cir. 1998) (finding the "in connection with" requirement satisfied when the defendant made his statements directly to the issuer of securities in order to induce the issuer to accept his offer to buy) with Latigo Ventures v. Laventhol & Horwath, 876 F.2d 1322, 1326 (7th Cir. 1989) (finding the plaintiffs' fraud claim deficient because they complained of material falsities that postdated their purchase of the

---

[4] Motive and opportunity also buttress Plaintiffs' allegations. According to Plaintiffs, "the fact that Roszak knew" he stood to gain from the misuse of Plaintiffs' investments supports "an inference that Roszak possessed the requisite state of mind to be attributed with scienter." Pl.'s Resp. at 12. While motive and opportunity are neither necessary nor sufficient to support an inference of intent of deceive, they are "useful indicators." Makor, 437 F.3d at 601.

relevant stock). Notwithstanding, on the facts pled here, the Court finds an aroma. Ultimately, a body may not be found, but the stench must be investigated nonetheless. What Defendants term an impermissible "backwards inference" drawn by Plaintiffs, see Def.'s Reply at 5—the inference that, if Defendants committed fraudulent acts in 2002, 2003, or 2004, they must have had the intent in 2000 to commit such acts and, consequently, they must have known in 2000 that their representations in the PPM were false—is an inference that a reasonable person could, at this stage, believe supported by the facts pled. Cf. Makor, 437 F.3d at 602 (holding that a complaint will survive only "if it alleges facts from which, if true, a reasonable person could infer that the defendant acted with the required intent"). If the allegations of fraud are true, the pleadings are not the proper vehicle for ascertaining with particularity whether Defendants intended to defraud investors at the time of the investment, or merely hatched the scheme later.

The last of Defendants' arguments considered here is that Plaintiffs have not alleged adequately the sixth element of a Rule 10b-5 claim. This element requires Plaintiffs to allege "loss causation"—that Defendants' misstatements or omissions caused Plaintiffs' *investment* to lose value. See Bastian v. Petren Resources Corp., 892 F.2d 680, 684-85 (7th Cir. 1990) ("If the plaintiffs would have lost their investment regardless of the fraud, any award of damages to them would be a windfall."); see also Movitz v. First National Bank of Chicago, 148 F.3d 760, 763 (7th Cir. 1998) (distinguishing transaction causation, where the plaintiff "would not have bought the stock, and so would not have sustained the loss, had the defendant been truthful," from loss causation).

The Amended Complaint states that "but for" the alleged misrepresentations, Plaintiffs "would not have purchased the units" and, "[a]s a direct and proximate result of defendants' false and misleading statements and fraudulent concealment, plaintiffs purchased their units and

have been damaged as a result of those purchases." Am. Compl. ¶¶ 32, 33. While these particular allegations are not direct statements of loss causation (as would be, for example, the phrase "but for Defendants misrepresentation, the Chicago Avenue project would not have sustained losses"), the allegations of the Amended Complaint taken as whole claim loss causation. Upon reading the pleading, Plaintiffs' contention is patently clear: Had Defendants had not misappropriated funds and engaged in self-dealing, the Chicago Avenue project would not have sustained the "staggering losses" that it did. Pl.'s Reply at 12. Defendants' motion to dismiss the Amended Complaint on this ground and the grounds previously discussed, therefore, is denied.

### B. Counts II-IV

Counts II through IV are state law claims. Defendant urges dismissal of Count II (common law fraud) and Count III (violation of Section 12 of the Illinois Securities Law of 1953) for the same reasons they urged dismissal of Count I. Because this Court has rejected Defendants' arguments as to Count I, Counts II and III will stand. Defendants also argue that Plaintiffs' common law claims—Count II (fraud) and Count IV (breach of fiduciary duty)—are preempted by the Illinois Securities Law, 815 Ill. Comp. Stat. 5/12. The cases Defendants cite, however, consider the application of the Illinois Securities Law statute of limitations to the various plaintiffs' causes of action. See Grumhaus v. Comerica Securities, Inc., No. 99 C 1776, 2003 WL 21504185 (N.D. Ill. June 30, 2003); Wilhelm v. A.G. Edwards & Sons, Inc., No. 02 C 0031, 2002 WL 1377568 (N.D. Ill. June 24, 2002); Tregenza v. Lehman Bros., Inc., 678 N.E.2d 14, 15 (Ill. App. Ct. 1997). Because Defendants have not asserted a statute of limitations

defense, this Court will not at this time dismiss Plaintiffs' common law claims on preemption grounds.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' Amended Complaint is DENIED.

Enter:

/s/ David H. Coar

David H. Coar

United States District Judge

Dated: **August 17, 2006**